UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

JHONATAN MONDRAGON, JORGE YUMBATO
CASTRO, JAVIER GONZALEZ CASTRO, URBANO
GONZALEZ, JANISSHONG GARCIA, OSCAR
TORRES, SERAFIN BLANCO VALLE, EMMA
MOLINA, SYLVIA CASTRO, CLARIBEL CUELLAR,
CARLOS JUAREZ RODRIGUEZ, and FRANCO
MALVACEDO



                        Plaintiffs,                      Index No. 20-CV-3394

        —against—                                        FIRST
                                                         AMENDED COMPLAINT

BIZ 2 CREDIT, INC., FUNDING CIRCLE LIMITED,
KABBAGE, INC., CELTIC BANK, BLUEVINE
CAPITAL, INC., LENDIO, INC., CHASE, BANK OF
AMERICA, CROSS RIVER BANK, UNITED STATES SMALL
BUSINESS ADMINISTRATION; JOVITA CARRANZA,
in her Official Capacity as Administrator of the
Small Business Administration; UNITED STATES
DEPARTMENT OF TREASURY; and STEVEN T.
MNUCHIN, in his Official Capacity as Secretary
of the Treasury,

                        Defendants                       JURY TRIAL DEMANDED

---------------------------------------------------------------x

The undersigned Plaintiffs, who experience several hardships due to the current Covid-19 pandemic, bring this action to challenge the imposition of a citizenship requirement by Defendants in order to participate in the Paycheck Protection Program nonexistent at law. Plaintiffs are unable to participate in this program that was set to expire on August 8, 2020. Since the restart of the program, Plaintiffs have been unable to obtain a PPP loan due to faulty software by all Defendants, jeopardizing the chances to obtain a PPP loan at all. Plaintiffs pray for an injunction to toll the statute of limitations until Defendants can rectify their misunderstandings and issues, and submit Plaintiffs' Paycheck Protection Program applications to the Small Business Administration.

Plaintiffs allege for their complaint against Defendants:

## PARTIES

1. Plaintiff Jhonatan Mondragon is a natural person, residing at 39-42 64th Street, Woodside, NY 11377.
2. Plaintiff Jorge Yumbato Castro is a natural person residing at 48-36 47th Street, Woodside, NY 11377
3. Plaintiff Urbano Gonzalez is a natural person residing at 39-42 64th Street, 2 Fl, Woodside, New York 11377.
4. Plaintiff Janisshong Garcia is a natural person residing at 175-08 93rd Avenue, Jamaica, New York 11432.
5. Plaintiff Oscar Torres is a natural person residing at 3050 Park Avenue, Apartment 16G, Bronx, NY 10451.
6. Plaintiff Serafin Blanco Valle is a natural person residing at 1828 Flatbush Avenue, Apt. 2, Brooklyn, NY 11210.
7. Plaintiff Emma Molina is a natural person residing at 31 Wesley Lane, Burlington NJ 08016.
8. Plaintiff Sylvia Castro is a natural person residing at 48-36 47th Street, Woodside, NY 11366.
9. Plaintiff Claribel Cuellar is a natural person residing at 619 Ridge Road 2nd Floor Lyndhurst, NJ 07071
10. Plaintiff Carlos Juarez Rodriguez is a natural person residing at 201 4th Ave., Apt 17 Redwood City, CA 94063.
11. Plaintiff Franco Malvacedo is a natural person residing at 15 Marksman Lane, Levittown, NY 11756.
12. Plaintiffs other than Jhonatan Mondragon are hereinafter collectively referred to as the "Applicant Plaintiffs."
13. Applicant Plaintiffs are engaged in business or are self-employed and were so engaged or self-employed on and before February 15, 2020.
14. Plaintiff Jhonatan Mondragon is engaged in the business of providing help to Spanish-speaking people with clerical tasks, providing accounting assistance and other professional consultations, and facilitating and providing assistance with completing paperwork related to applications by parties who may be eligible to apply for loans guaranteed by the Small Business Administration under the Paycheck Protection Program established by the "CARES" Act as herein below defined.

15. Defendant Biz2Credit is a corporation organized and existing under the laws of Delaware, with an office at 1 Penn Plaza, Suite 4530, New York, NY 10119.

16. Defendant Funding Circle Limited is a California limited liability company with an office at 85 Second Street, Suite 400, San Francisco, CA 94105.

17. Defendant Kabbage, Inc. is a Utah corporation with an office at 268 State Street, Suite 300, Salt Lake City, UT 84111.

18. Defendant Bluevine Capital, Inc. is a California corporation with an office at 401 Warren Street, Suite 1091, Redwood City, CA 94063.

19. Defendant Lendio, Inc. is a Utah corporation with an office at  4100 Chapel Ridge Road, Suite 500, Lehi, UT 84043.

20. Defendant Chase, is a Corporation authorized to do business in the State of New York.

21. Defendant Bank of America, is a Corporation authorized to do business in the State of New York.

22. Defendant Cross River Bank, is a Corporation authorized to do business in the State of New York.

23. Defendants Jovita Carranza, the U.S. Small Business Administration, United States Department of the Treasury, and Steven T. Mnuchin are hereinafter collectively referred to as the "Government Defendants."

## JURISDICTION

24. This action is brought to recover actual and punitive damages, declaratory and injunctive relief under the Equal Credit Opportunity Act, 15 USC 1691(e)(b) and for review of the actions of the Small Business Administration and the Department of the Treasury in issuing a Standing Operating Procedure purportedly providing guidance to lenders participating in the Paycheck Protection Program.

25. This Court has original jurisdiction of this action under and by virtue of 28 U.S.C. 1331, because it arises under Federal Law and is brought for the vindication of Plaintiff's rights under the laws of the United States, to include the Equal Credit Opportunity Act, 15 USC 1691 et seq., and 42 USC 1981. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. 2201, as this a civil action seeking, in addition to other remedies, relief in the form of declaratory judgement. Further, it requests judicial review of federal agency action under the Administrative Procedure Act ("APA").

26. The APA provides a waiver of sovereign immunity as well as a cause of action. 5 U.S.C. 702.

27. The Little Tucker Act provides jurisdiction against claims of the United States for claims of less than $10,000 concurrently with the federal district courts.

28. This Court also has supplemental jurisdiction under and by virtue of 28 U.S.C. 1367(a) over all other claims in the action within such original jurisdiction as they form part of the same case or controversy under Article III of the Constitution.

29. Venue is proper in the Eastern District of New York under 28 U.S.C. 1391(b)(2) because a substantial part of the acts complained of took place in this District.


## FACTS PERTAINING TO PLAINTIFFS' PPP APPLICATIONS


30. Applicant Plaintiffs have since February 29, 2020 and earlier employed personnel for whom it paid salaries and payroll taxes, or else have been self-employed individuals within the meaning of the CARES Act.

31. The meaning of self-employed individual, follows the Internal Revenue Code §1402 meaning of self-employed, applicable to both immigrant and nonimmigrant status carrying a trade or business of a individual other than a nonresident individual within the meaning of the Internal Revenue Code.

32. Defendant BIZ 2 CREDIT, INC., is a Delaware Corporation authorized to do business in the State of New York, with an office at One Penn Plaza, New York, NY 10019.

33. Defendant FUNDING CIRCLE LIMITED, is an unincorporated association with an office at 85 2nd Street, Suite 400, San Francisco, CA, USA 94105. It markets its services to persons in the State of New York through the medium of the Internet, utilizing electronic facilities accessed through "fundingcircle.com."

34. Defendant KABBAGE, INC. is an online financial technology corporation with an office at 925B Peachtree Street, Atlanta, Georgia 30309. It markets its services to persons in the State of New York through the medium of the Internet, utilizing electronic facilities accessed through "kabbage.com" and derivatives thereof.

35. CELTIC BANK is a moneyed corporation with an office at 268 S. State Street, Salt Lake City, Utah. It markets its services to persons in the State of New York through the medium of the Internet, utilizing electronic facilities accessed through "celticbank.com."

36. BLUEVINE CAPITAL INC is a moneyed corporation with an office at 30 Montgomery St #1400 Jersey City, NJ 07302. It markets its services to persons in the State of New

York through the medium of the Internet, utilizing electronic facilities accessed through "bluevine.com."

37. Each of Biz2Credit, Funding Circle, Limited, Kabbage, Inc., Celtic Bank, Bluevine Capital, Inc., (collectively the "Bank Defendants"), Cross River Bank, and Lendio, Inc., is a creditor within the meaning of the Equal Credit Opportunity Act, 15 U.S.C. 1691(a)(e).

38. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was signed into law to provide fast and direct economic assistance for small businesses, workers, individuals, and families.

39. Jhonatan Mondragon is an Enrolled Agent and carries on a business which, among other services, includes advising clients on the availability of loans, including loans guaranteed by the Small Business Administration under the provisions of the CARES Act. Such loans include "PPP Loans" which are loans available under the Paycheck Protection Program as part of the CARES Act.

40. Jhonatan Mondragon and/or his office staff assisted fellow plaintiffs Jorge Yumbato Castro, Janisshong Garcia, Javier Gonzalez Castro, Oscar Torres, Serafin Blanco Valle, Emma Molina, Sylvia Castro, Claribel Cuellar, Carlos Juarez Rodriguez, Urbano Gonzalez, and Franco Malvacedo as well as dozens of non-plaintiff clients in applying for PPP Loans during the first period of their availability[1] following passage of the CARES Act.

41. Mondragon and/or his office staff assisted approximately fifty-two clients in applying for first-round PPP Loans, some of whom are and were SSN[2]-holders and some of whom are and were ITIN[3]-holders.

42. For those not qualified to hold a SSN, an ITIN enables non-citizens who live, work or have business in the United States to pay taxes without a SSN, to comply with US tax laws, and allows certain tax payments made to count toward Social Security earnings, if the ITIN holder should eventually become eligible for a SSN, such that a non-citizen living in the United States without authorization may be issued an ITIN in order to become a non-citizen taxpayer.

43. All plaintiffs are residents within the meaning of §7701 of the Internal Revenue Code, either by citizenship, green card test, or by meeting the substantial presence test of the Internal Revenue Code.

---

[1] "first round" for which applications were required to be submitted on or before August 8, 2020

[2] Social Security Number

[3] Individual Taxpayer Identification Number

44. In December, the United States Congress passed the Consolidated Appropriations Act of 2021, which included the Covid-related Tax Relief Act of 2020. The Act extended the PPP Loan program and added an second round of forgivable loans.

45. The law expanded the eligibility for the loans, and restricted the ability of certain individuals and entities to apply. The law did not state that ITIN holders, or nonresidents or noncitizens were ineligibles.

46. President Biden issued a statement on February 22, 2021 that stated the SBA should make clear guidance that ITIN holders taxpayers qualify for a PPP Loan. Similarly, the SBA PPP Loan form now shows ITIN as an acceptable taxpayer identification number.

47. In March 12, 2021, the SBA updated its Q&A.

48. It states in Question 64: If an owner of an applicant, or a sole proprietorship, self-employed individual, or individual contractor has an Individual Taxpayer Identification Number (ITIN) instead of a Social Security Number (SSN), can they use the ITIN on the Borrower Application Form for a PPP loan and the forms to apply for loan forgiveness?

    Answer: Yes. If an owner of an applicant, or a sole proprietorship, self-employed individual, or independent contractor has an ITIN instead of an SSN, they may use the ITIN on the PPP Borrower Application Form (SBA Form 2483, 2483-C, 2483-SD, and 2483-SD-C, or lender's equivalent) and the PPP Loan Forgiveness Applications Forms (SBA Forms 3508, 3508-EZ, and 3508S, or lender's equivalent). An ITIN is a tax processing number only available to certain nonresident and resident aliens, their spouses, and dependents who cannot get an SSN. It is a 9-digit number, beginning with the number "9", formatted like an SSN (NNN-NN-NNNN). To be eligible for a PPP loan or to receive loan forgiveness, the applicant must meet all eligibility criteria and PPP loan or to receive loan forgiveness, the applicant must meet all eligibility criteria and PPP requirements, which includes the requirement that the principal place of residence for a sole proprietorship, self-employed individual, or independent contractor must be in the United States.

49. Within those persons who were loan applicants assisted by the office of Mondragon with completing and submitting their applications, of the approximately forty who had a Social Security Number (SSN) style taxpayer ID, almost all of were approved for a PPP Loan, whereas of the approximately eleven non-citizen applicants having an ITIN style taxpayer ID, almost all were not approved or denied [See Mondragon Affidavit, annexed at Exhibit A].

50. Those with an ITIN were disproportionately not approved or denied for a PPP Loan.

51. Other than type of taxpayer ID, the type of information submitted, as well as the amount of documentation supplied in support of the applications was substantially

similar between the group of citizen applicants or those holding a SSN and the group comprised of those holding an ITIN or non-citizens who are ineligible for a SSN. [See Mondragon Affidavit, Annexed at Exhibit A].

52. As to which Bank Defendants each Plaintiff brings claims, each Plaintiff brings claim only against those banks to which he or she applied for a PPP Loan, unless stated otherwise.

53. Plaintiff Jorge Yumbato Castro ("Jorge Castro") has an ITIN number 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.

54. Jorge Yumbato Castro has been a sole proprietor in the commercial construction industry, providing remodeling, general construction services, metal framing, and drywall or sheetrock installations primarily in Kings and New York counties since 2016, and operates the business in his own name. Prior March of 2020, he sometimes subscribed the services of subcontractors, and has no W-2 employees. A non-trivial portion of the residence he rents has been used to store tools and equipment.

55. On June 26, 2020, Jorge Yumbato Castro submitted application for a PPP loan via web submission at to Biz2Credit Inc. with the help of Jhonatan Mondragon.

56. On June 27, 2020, Jorge Yumbato Castro submitted application for a PPP loan via web[4] submission to Cross River Bank with the help of Jhonatan Mondragon.

57. On June 27, 2020 Jorge Yumbato Castro received an email letter of denial from Cross River Bank for stated reason: Application not completed or insufficient information provided.

58. On June 29, 2020, Jorge Yumbato Castro submitted application for a PPP loan via web[5] submission to Bluevine Capital, Inc. with the help of Mondragon.

59. On June 29, 2020, Jorge Yumbato Castro received an email letter from Bluevine Capital Inc. stating they were unable to validate the information submitted.

60. On or about August 5, 2020, Jorge Yumbato Castro submitted application for a PPP loan via web[6] submission to Biz2Credit Inc with the help of Mondragon.

61. It would have been futile for Jorge Yumbato to apply with other lenders, because they all had the same practice of denying PPP loans for ITIN holders.

62. In response to this application, on August 6, 2020, Jorge Yumbato Castro received email from Biz2Credit Inc containing documents to electronically sign. Jorge Yumbato Castro e-signed these documents on August 6, 2020 and sent them to Biz2Credit Inc the same day. Jorge Yumbato Castro got an email from Biz2Credit notifying that all required signatories have signed.

---

[4] at URL https://www.crossriver.com/paycheck-protection-program
[5] at URL https://www.bluevine.com/paycheck-protection-program/
[6] at URL https://www.biz2credit.com/

63. However, August 7, 2020, Mondragon checked online with Biz2Credit to confirm Castro's approval, and the status showed *denied*.

64. August 7, 2020 Jorge Yumbato Castro emailed Biz2Credit Inc inquiring why this was so. Reply email from Biz2Credit in response to this inquiry referenced solely that Castro did not mention his SSN in the application.

65. Jorge Yumbato Castro's ITIN tax identification number had already been supplied to Biz2Credit Inc by Jorge Yumbato Castro during the application process. Biz2Credit declined to include it in the inevitable loan documents prepared by Biz2Credit for Jorge Yumbato Castro to e-sign, which documents were not modifiable by Castro.

66. If he had received them, Jorge Yumbato Castro would have used the PPP loan funds as Owner Compensation Replacement for his sole proprietorship if the PPP loan had been approved and the funds received.

67. Jorge Yumbato Castro was not approved and has not received PPP funds.

68. He has not been able to recover from loss of contracts that will cover all the expenses to keep tools, pay rent. Due to the pandemic, he also has not been able to find a stable job to replace the income that formerly came from his sole proprietorship.

69. Jorge Yumbato Castro now owes three months of unpaid back rent.

70. In order to cover three months of necessary basic expenses for which he lacked the money, he has incurred credit card debt on which interest charges are accruing and compounding.

71. He has also fallen behind on his motor vehicle lease payments.

72. He expects a credit rating hit from these events will affect his interest rates, and his ability to conduct business.

73. He has acute anxiety over how he will get by, which include concerns over being without housing once the moratorium on evictions is lifted because his rent arrears is likely to soon reach the point where, even if a portion of his client jobs return, he will be unable to pay back-rent stacked on top of the current rent.

74. Franco Malvacedo ("Malvacedo") is self-employed and has been providing residential carpentry, drywall, painting, and tiling services in his own name for six years, servicing the Nassau County and Queens County, New York areas. A portion of his residential rental is dedicated to storing the tools and equipment he uses for work.

75. Plaintiff Franco Malvacedo holds an ITIN Number 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.

76. Malvacedo applied for a PPP loan the fourth week in June, 2020 via web[5] submission to Bluevine with the help of the office of Mondragon.

77. Malvacedo received a reply letter dated June 30, 2020 via email from Bluevine denying the loan, saying they were unable to validate the information submitted.

78. Malvacedo applied for a PPP loan on June 29, 2020 via web submission to Cross River Bank with the help of the office of Mondragon.

79. Malvacedo received a denial email from Cross River Bank on July 3, 2020 with reason for denial stated as: Application not completed.

80. It would have been futile for Franco Malvacedo to apply with other lenders, because they all had the same practice of denying PPP loans for ITIN holders.

81. Malvacedo applied, between June 26, 2020 and August 5, 2020 via web6 submission to Biz2Credit for a PPP loan and signed and submitted documents but is still awaiting an answer.

82. Malvacedo applied for a PPP loan in late June or early July via web submission to Kabbage, Inc. with the help of the office of Mondragon.

83. Malvacedo received an email from Kabbage on July 14, 2020 notifying him that Kabbage cancelled his application because Kabbage couldn't verify his identity.

84. Malvacedo has experienced profound loss of work contracts from the economic downturn after the Covid-19 outbreak which resulted in financial hardship.

85. Malvacedo was denied or was not approved for a PPP loan - see paragraphs 74-83, herein - and consequently he has not received loan funds.

86. If he had been approved and had received loan funds, he would have used them for owner compensation replacement and necessary business overhead.

87. The loan would have been forgivable.

88. Malvacero had to sell his tools and equipment at a discount to pay bills and rent. He suffered the loss of more than half his tools and equipment, which portion was valued at $8,000-$10,000.

89. Malvacedo has incurred late fees from Bank of America for late payment on his credit card.  Malvacero is two months behind in rent.

90. Malvacedo's car was repossessed upon foreclosure of his auto loan. He still owes the bank for the remainder of the car loan, and is without the automobile.

91. Malvacedo suffers pecuniary injuries in the form of interest and fees; damage to his business; temporary reduction in earning capacity from loss of tools, equipment, and automobile assets necessary for work, partial loss of their value upon quick sale of tools/equipment made under financial strain and automobile foreclosure respectively, and upcoming housing insecurity in the Spring of 2021, which would have been averted had PPP loan funds been available to him and used for Owner Compensation.

92. Janisshong Garcia is self-employed works and has worked cleaning residences in New York City since 2010.

93. Janisshong Garcia ("Garcia") holds a ITIN taxpayer ID 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.

94. Jannishong Garcia has always filed as a self-employed individual with the Internal Revenue Service.

95. However, on or around 2014, Janisshong Garcia, on advice of Jhonatan Mondragon, filed timely amended returns claiming exemption of the self-employment tax, on the grounds that she was a misclassified household employee. She requested a $1,000 refund for each amended tax year, based on a $1,000 child tax credit, for supporting her daughter,

96. On or around 2015, the Internal Revenue Service denied her claim without further explanation.

97. In 2020, with the full Covid pandemic, Jhonatan Mondragon proposed the following course of action to Janisshong Garcia.

98. Jhonatan Mondragon recommended applying to a PPP Loan while her issues are resolved, and to join the lawsuit in order to have a court of competent jurisdiction determine her legal rights.

99. Jhonatan Mondragon informed Janisshong Garcia that, while he is not a lawyer, United States Courts are a branch of government, co-equal to the other branch in competence and dignity by constitutional design, with legal and equitable federal and state grants of power to redress wrongs.

100. Jhonatan Mondragon suggested, that he helps her translate her issues so a competent judge can hear her pleadings and provide her with appropriate relief. All he would do be a messenger who would translate her pleas to the court in English.

101. However, Jhonatan Mondragon did advice to take a PPP loan, because such advice is not legal advice, as it does not attempt to clarify legal duties, rights, obligations and remedies. Rather, it is more akin to an advice made by a friend or another person in a fiduciary capacity protected by the First Amendment right to association, or so did Jhonatan Mondragon in good faith believed so.

102. There may be advice that can be considered legal advice, but if outlawed, would create chaos and would create distrust in the rule of law. Therefore, Jhonatan Mondragon's friendly advice to try to adopt a proactive attitude towards her affairs cannot be considered one; else the world would paralyze on the thought of what friendly advice constitute a legal one.

103. With the help of Mondragon, on June 27, 2020, Garcia submitted application for a PPP loan via web[4] submission to Cross River Bank.

104. Cross River Bank sent an email to Garcia, received on June 27, 2020, with stated reason for denial that her application is not completed or insufficient information provided.

105. On or about June 26, 2020 Garcia, with the help of Mondragon, submitted application for a PPP loan via web submission to Biz2Credit.

106. Because she did not receive a response in the time expected, with the help of the staff at the office of Mondragon, she, and staff at the office of Mondragon on her behalf, subsequently tried contacting the underwriter for Biz2Credit through emails & phone calls but all she got were automated emails asking for more information. However, she had already supplied all the information she had.

107. She subsequently tried to contact the underwriter by phone and email in early August. Although she was successful in reaching an underwriter via email at this time, August 6, 2020, the result was the underwriter sent an email to a different underwriter to review the file. However, this only led to receipt of emails asking for more information by the second underwriter. She had already supplied all the information and documents requested, except for one schedule and a requested bank statement because these documents did not exist. She supplied the balance of documents which were all the documents that were in her possession responsive to the requests.

108. It would have been futile for Janisshong Garcia to apply with other lenders, because they all had the same practice of denying PPP loans for ITIN holders.

109. Garcia was expecting to use the PPP loan primarily to cover her gross pay. Also, to be able to continue to pay for the space she rents, a small portion of which is dedicated to business use.

110. Garcia suffered loss of business from lockdown and has experienced reduced demand for services by her clients after March of 2020, since which she has not been able to operate normally and has experienced marked loss of income.

111. As a result, the reduction in her income, her ability to make rent without having to forego basic necessities has been compromised. She also incurred late charges.

112. Oscar Torres has been self-employed as a cleaning and maintenance worker for multiple private residences performing yard work, various maintenance tasks, and house cleaning, since January of 2018.

113. Torres holds a ITIN taxpayer ID 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.

114. Torres applied for a PPP loan on June 24, 2020 via web submission to Kabbage, Inc. with the help of the office of Mondragon.

115. Subsequently, Torres received a letter via email from Kabbage that they were unable to verify information he submitted as part of the application.

116. Torres applied for a PPP loan on June 27, 2020 via web submission to Biz2Credit with the help of the office of Mondragon.

117. With respect to Biz2Credit, Torres has provided all documents and the status of his application has been 'under review' or pending since then to the present time.

118. As a result of this continued application status, he has not received PPP approval or funds.

119. Torres applied for a PPP loan June 29, 2020 via web submission to Bluevine Capital with the help of Mondragon. Torres provided all the documents to Bluevine and was, the same day, denied.

120. Torres applied to Cross River for a PPP loan on June 27, 2020 via web submission.

121. Torres was denied by Cross River on July 3, 2020 for reason stated: Application not complete or incomplete information submitted.

122. It would have been futile for Oscar Torres to apply with other lenders, because they all had the same practice of denying PPP loans for ITIN holders.

123. Torres has not been approved for a PPP loan and consequentially has not received loan funds.

124. Torres lost client assignments this year for several months. The austerity measures he took to mediate the effects of his markedly reduced income this year were insufficiently impactful to enable him to make rent. He went in arrears on rent by two months. Although he has sought replacement clients, and has started working as a janitor at an art school to offset his loss of clients, he is in danger of losing his apartment when evictions resume because he is behind in paying rent.

125. If he would have received a PPP loan, he would have been able to obtain forgiveness for the amount spent on Owner Compensation Replacement amount, which he could have used to pay rent.

126. Emma Molina is a sole proprietor who has been performing both residential cleaning and child care services for working families since early February of 2018.

127. Emma Molina was audited by the New York State Department of Taxation for an New York State refund audit on or around 2017.

128. After showing bank statements and affidavits, New York State Department of Taxation settled with Emma Molina based on half of the return.

129. Emma Molina accepted this settlement because of the need to her funds and her lack of bank statements for part of the year.

130. Emma Molina had to close her Chase account because of account fees. She uses a prepaid debit card which does not provide her with bank statements.

131. Emma Molina applied to Kabbage, Inc. on June 24, 2020 with the help of the office of Mondragon, for a PPP loan which she intended to use for owner compensation replacement to help cover income losses caused by the pandemic.

132. Emma Molina received a letter on July 14, 2020 from Kabbage stating the information she submitted was unable to be verified.

133. Emma Molina remains unapproved by Kabbage and consequently has not received PPP funds.

134. Emma Molina was denied PPP loans as a consequence of the narrow interpretation of Cares Act documentation required by all defendants,

135. It would have been futile for Emma Molina to apply with other lenders, because they all had the same practice of denying PPP loans for unbanked self-employed individuals or individuals with nontraditional banking providers.

136. Defendants' practices has the effect of excluding Hispanics from the PPP loan program and from the Defendant's services, because they tend to be served by nontraditional bankers.

137. Defendant's practices are also illegal under New York State loan because the reject otherwise qualified individuals for arbitrary and capricious reasons.

138. Emma Molina has been unable to recover from loss of contracts. She is a single mother and her only source of income is from her dedicated work for her clients, whose demand for her services was sharply reduced due to the pandemic.  Not being able to work has caused hardships, including late payment of utilities and rent and foregoing some necessities for an extended period of seven months. She has entered into installment plans in an effort to manage shortfalls.

139. If Emma Molina would have received a PPP loan funds, she could have expected to obtain forgiveness for the amount spent on Owner Compensation Replacement. This Owner's Compensation could have been used to pay her own rent and utilities. This would have ameliorated hardship and avoided incurred fees.

140. Urbano Gonzalez is a sole proprietor and resident of Woodside, NY, providing cooking services and food catering to clients in New York City for years, via both contract work for restaurants and also private catering sales.

141. Government-issued executive orders for Coronavirus transmission-mediation which included ban on private gatherings and restaurant operation restrictions.

142. Such ban on private gatherings and reduced operations and closures of restaurants resulted in loss by Urbano Gonzales of his private catering sales, and his restaurant contracts and clients.

143. Urbano Gonzalez has an ITIN number 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.

144. Urbano Gonzalez applied on or about June 29, with Mondragon's help, via web submission to Blue Vine Capital for a PPP loan.

145. Urbano Gonzalez received a letter from Bluevine dated June 29 denying the application for the stated reason that they were unable to validate the information submitted on the application.

146. In July of 2020, Urbano Gonzalez applied to Biz2Credit via web submission for a PPP loan with the help of Mondragon. In late July of 2020, the application was approved and the loan was funded on or about July 30, 2020.

147. The information submitted to Bluevine and Biz2Credit by/for Urbano Gonzalez in their respective applications in an effort to show qualification to receive a PPP loan was the same or substantially the same.

148. That portion of the complaint of Urbano Gonzalez against Bluevine Capital is for injuries sustained on account of its denial delaying his receipt of PPP loan funds which had to be sought and were ultimately obtained from another lender.

149. The injuries of Urbano Gonzalez incurred on account of the delay were fees incurred.

150. That portion of complaint of Urbano Gonzalez which is against Biz2Credit, the SBA, and the Treasury and their respective officials are for the injuries that are anticipated on account of the disparate treatment of those non-citizens ineligible to apply for a SSN. The basis for this anticipation is the account by Mondragon that banks have given ITIN-holders disparate treatment relative to SSN-holders and as such Urbano Gonzalez anticipates loan forgiveness may be withheld, even if he should meet the requirements for forgiveness, contrary to his original expectation when he applied for the loan.

151. If Urbano's PPP loan is not forgiven, Jhonatan Mondragon would be injured, since he will have to forfeit fees already received.

152. It would have been futile for Urbano Gonzales to apply with other lenders, because they all had the same practice of denying PPP loans for ITIN holders.

153. Silvia Castro ("Silvia") is a sole proprietor doing business in her own name. She provides residential cleaning and housekeeping services in the Queens, NY area.

154. She maintains an area of space within her home to store mops, wringers, supplies, cleaning machines, other equipment that she uses only on her client's houses.

155. Silvia holds ITIN type taxpayer ID number 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.

156. Silvia applied on August 5, 2020, with Mondragon's help, via web[7] submission to Lendio, Inc. for a PPP loan.

157. To date, the status of her application shows as still pending on the portal.

---

[7] at URL https://www.lendio.com/covid-relief/sba-paycheck-protection-program-loans/

158. It would have been futile for Silvia Castro to apply with other lenders, because they all had the same practice of denying PPP loans for ITIN holders.

159. If she had been approved and received PPP loan funds, she would have used them for Owner Compensation Replacement and the keeping of her equipment, which expenditures would make her loan forgivable.

160. Silvia has been behind on her rent for a period of three months due to a lack of work opportunities caused by the Covid-19 pandemic.

161. She is concerned she may be forced to relocate in the near future and will experience housing insecurity when the moratorium on evictions lifts in the Spring.

162. C&C Commercial Cleaning Services LLC, is a sole proprietorship in which Plaintiff Claribel Cuellar is the whole member/owner. The business is located in Bergen County, New Jersey, began in 2018.

163. The LLC is treated as a disregarded entity for tax purposes, and because of the SBA affiliation rules, the Claribel Cuellar, and not the LLC, is considered the applicant.

164. Claribel Cuellar has SSN 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.

165. C&C Commercial Cleaning Services LLC has tax EIN[8] number 82-5383115.

166. Claribel Cuellar applied on June 14, 2020 for a PPP Loan for her business, C&C Commercial Cleaning Services LLC, with the help of Mondragon via web submission to Kabbage Inc.

167. Claribel Cuellar applied on June 24, 2020 for a PPP Loan for her business, C&C Commercial Cleaning Services LLC, with the help of Mondragon via web[9] submission to Blue Vine Capital. The application was never approved. It resulted instead in notification that the bank was not able to process the application at that time since they had too many applicants.

168. Claribel Cuellar applied again to Blue Vine Capital for a PPP Loan for her business, C&C Commercial Cleaning Services LLC, with the help of the office of Mondragon via web[9] submission on or about August 7, 2020.

169. Subsequent to this August submission, Blue Vine Capital sent email communication to Ms. Cuellar stating that, based on the submitted application and supporting documentation, the application could not be approved.

170. Claribel Cuellar received application approval from Kabbage Inc, but is unable to get the PPP loan funds because, according to Kabbage Inc, a technical problem is preventing it.

171. Since Cuellar's receipt of notice that an issue was preventing her receipt of loan funds, Cuellar and the staff at the office of Mondragon tried calling Kabbage Inc.

---

[8] Employer Identification Number

[9] at URL https://www.bluevine.com/paycheck-protection-program/

multiple times to see to it that the issue was rectified but were never able to get the issue resolved.

172. To date, C&C Commercial Cleaning Services LLC has not been funded with a PPP Loan.

173. Unlike the other applicant-plaintiffs who bring a cause of action for discrimination, Claribel Cuellar brings this action against Kabbage Inc specific performance of the loan agreement and Wrongful failure to honor a loan commitment.

174. C&C Commercial Cleaning Services LLC experienced difficulty from the various months during which it was not able to operate due to loss of clients from the pandemic, and consequently has not been able to pay its employee-owners, who are also primary workers for the company, as ordinary, nor helpers. Cuellar would have used a PPP Loan for this purpose.

175. Because Claribel Cuellar has not received a First-Draw PPP Loan, she may lose the ability to apply for a Second Draw PPP Loan.

176. The negligence experienced by Claribel Cuellar is a violation of the SBA and NYS lender rules and regulations.

177. Carlos Juarez Rodriguez is a self-employed independent day-laborer who has worked in numerous locations and on various job sites since June 1, 2017.

178. Carlos Juarez Rodriguez has an SSN 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 and a work permit.

179. Carlos Juarez Rodriguez applied, with the help of the office of Mondragon via web submission to Kabbage Inc on June 25, 2020 for a PPP loan.

180. Subsequently, Carlos Juarez Rodriguez received a letter from Kabbage indicating they could not approve because the information submitted could not be verified, and requested proof of address.

181. Although proof of address was supplied, Kabbage Inc was dissatisfied because the address on Carlos Juarez Rodriguez's current Drivers License ID does not match that of other documents he submitted in consideration for a loan.

182. Kabbage failed to take a holistic view of Carlos Juarez Rodriguez as an applicant, whose work as an independent day-laborer sometimes requires him to move residency between locations. Carlos Juarez Rodriguez does not pay both for hotels at the location of his job site and also rent at a permanent, single location. As such, his residency can "follow the work". Kabbage should have afforded him an opportunity to account for the different addresses with alternative form(s) of proof and/or enabled him to make an explanation before denying him.

183. Other lenders did not accept Carlos Juarez Rodriguez to apply for a PPP loan because he had a working permit, not a green card or a citizenship.

184. It would have been futile for Carlos Juarez Rodriguez to apply with other lenders, because they all had the same practice of denying PPP loans for applicants who are neither green card holders or citizens. It is one of the questions asked by lenders before you can proceed further.

185. Due to the pandemic, Carlos Juarez Rodriguez was not able to pay rent for nearly seven months because he was not able to work at a construction site to which he was assigned that was shut down due to Covid-19 closures, and could not secure certain work elsewhere, due to the pandemic.  He is at substantial risk of being dispossessed from his home and is experiencing food insecurity, loss of belongings, and has incurred late fees.

186. Had Carlos Juarez Rodriguez received PPP loan funds, the loan would have been forgivable as the funds would have been used for his compensation pay. The loan funds, together with austerity measures would have reasonably been expected to result in fewer months of unpaid back-rent owed as well as would have enabled the purchase basic necessities.

187. On August 7, 2020, Javier Gonzales Castro applied, with the help of Jhonatan Mondragon for a PPP Loan from Blue Vine Capital Inc via web submission.

188. On the same day, Javier Gonzales Castro was denied a PPP Loan by Blue Vine Capital for the stated reason of inadequacies in the submitted documentation and information and their inability to verify all of it. It stated the decision is final and indicated that no additional documentation can be provided to reverse the decision.

189. On or about August 7, 2020, Javier Gonzales Castro applied, with the help of Jhonatan Mondragon for a PPP Loan from Biz2Credit via web submission.  On or about August 7, 2020, Javier Gonzales Castro received an email stating his application has been approved.  Loan funds in the amount of $11,200 were disbursed on or about August 7, 2020.

190. The injuries of Javier Gonzales Castro are that, due to disparate treatment of non-citizens by the banks to which ITIN-holders have applied as represented to him by the office of Jhonatan Mondragon, he has concerns that that his loan will not be forgiven as he originally expected at the time he applied for it.

191. It would have been futile for Javier Gonzales to apply with other lenders, because they all had the same practice of denying PPP loans for ITIN holders

192. Each Applicant is a client of Jhonatan Mondragon. Mondragon suffered pecuniary damage as he is unable to collect his fee from each of the Plaintiffs who have not been funded, which fee is, following PPP loan approval, is payable upon Applicant's receipt of loan funds, which did not occur.

193. On various dates in the Spring and Summer of 2020, Plaintiffs attempted to apply to Defendants for loans to be guaranteed by the United States Small Business Administration under the Paycheck Protection Program as created by the Coronavirus Assistance and Recovery Act.

194. On January 2021, Jhonatan Mondragon assisted all individuals to apply for a PPP loan. The goal was done in order to render this complaint moot.

195. Nevertheless, no plaintiff has received a PPP Loan.

196. Plaintiff Jhonatan Mondragon has hired several individuals to assists with PPP loan submitting documentations and calling customer support in order to better serve his customers and clarify any questions with different lenders, including Bank Defendants.

197. Jhonatan Mondragon felt this was necessary because there are new criteria of eligibility which would produce a larger PPP loan amount to individuals meeting the criteria.

198. Nevertheless, all but 2 applications have been either denied or has yet to be approved since January by Bank Defendants.

199. The reason of this is due to gross negligence, the rise of faulty software by Bank Defendants and Government Defendants, and a confrontational attitude by Bank Defendants employee.

200. For some clients, Bank Defendants has ignored calls and emails.

201. Sometimes, their software outright rejects submission of Drivers licenses, IDS, tax returns, voided checks, etc.

202. Other times, Bank Defendants are unwilling to follow the SBA guidance and calculations. For instance, some bank defendants do not want to calculate the PPP loan according to the gross income calculations, or the seasonal business calculations.

203. At other times, the Bank Defendants confuse the rules all together. For instance, the Bank Defendants confuse a Schedule K-1 from an S corporation, which cannot used to calculate a PPP Loan, for a Schedule K-1 from a Partnership, LLC, LLP, LP, which can be used to calculate a PPP Loan because it shows the amount of income subject to self-employment taxes.

204. Confronted with these explanations, Bank Defendants just ignored the information, and either decline the loan or simply become nonresponsive.

205. The worse offense however, is how Bank Lenders submit a PPP loan application to secure an SBA number without actually approving the loan or reviewing the information.

206. Bank Defendants do this to avoid wasting resources to approve a loan, only for an applicant to already have an application approved by another lender.

207. Nevertheless, must of the time, the Bank Defendants become unresponsive or stop processing the loan. For instance, Urbano Gonzalez has been waiting since January for his Second Draw PPP Loan, even though Biz2Credits states that he has been approved for a loan.

208. This has caused financial havoc to Plaintiff Jhonatan Mondragon. Plaintiff Jhonatan Mondragon has seen little revenue from what should be a ministerial paperwork application. Plaintiff Jhonatan Mondragon has incurred payroll costs that he would otherwise have not incurred due to misconduct by Bank Defendants. On top of that, Plaintiff Mondragon had incurred considerable financial charges and costs which wouldn't be incurred due to Defendant's negligence and misconduct.

209. Plaintiffs were and are applicants within the meaning of the Equal Credit Opportunity Act, 15 U.S.C. 1691(a)(b), "ECOA".

210. Each of the Bank Defendants refused to submit Plaintiffs' applications for loan guaranty, on the basis that Plaintiff's or Plaintiff's principal does not have a valid Social Security Number and Plaintiff lacks a valid Employer Identification Number.

211. Each Defendant's act directly contravened the express provision of Section 1101(d)(2)(B) of the Coronavirus Aid, Relief and Economic Security Act ("CARES Act") that a lender shall consider an applicant for loan guarantee under the CARES act only on the basis that the applicant was in business on March 1, 2020 and had employees for whom it paid salaries and payroll taxes or was a self-employed individual.

212. Each Defendant's refusal to submit Plaintiffs' applications for guaranty by the SBA was pretextual and was in fact an instance of discrimination on the basis of the national origin of Plaintiffs.

213. Even if Defendants' discrimination on the basis of alienage should be found not prohibited under ECOA, the facially permissible alienage discrimination effected discrimination on the basis of National Origin of Plaintiffs because it has a disparate impact on those of Latin-American Origin.

214. All of the Plaintiffs are of Latin-American region National Origin.

215. Each of the Bank Defendant's conduct was and continues to be a violation of the Equal Credit Opportunity Act, 15 U.S.C. 1691, which provides in relevant part:

> "DISCRIMINATION It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—(1) on the basis of...national origin..."

216. All plaintiffs met the minimum qualifications to be eligible for a PPP Loan, except that most do not hold a SSN, which, although used as a factor for eligibility, is prohibited from being used as such because it is discrimination based on alienage and not indicative of the borrower to perform on the loan agreement.

217. Defendant's discrimination based on alienage is in violation of 42 USC 1981.

218. In consequence of Defendant's unlawful action, each Applicant Plaintiff incurred or will imminently incur one or more of the following injuries; inability of the business to provide for owners' compensation and consequential injuries therefrom including interest and late fees, dispossession, inability to meet payroll obligations, loss of assets, loss of value of assets, loss of earning potential, and potential permanent discontinuance of their businesses. These resulted in damages in an amount to be determined at trial but not less than the amount of the PPP Loan that they would and should have received had the Bank Defendants properly submitted their PPP Loan Applications.

219. The CARES Act created the Payroll Protection Program Loan Program which provides to eligible person Payroll Protection Program Loans, (PPP Loans) which can be fully forgivable if certain conditions are met.

220. The CARES Act and SBA's interim rules state that an individual who is a sole proprietorship or independent contractor or eligible self-employed individual, and was in operation on February 15, 2020 is eligible to apply for a PPP Loan.

221. The interim rules also stated those persons who are specifically ineligible for PPP Loans. Those are persons who are (i) engaged in any activity illegal under Federal, state or local law; (ii) household employers; (iii) applicants with at least 20% of equity owned by an individual who is incarcerated, on probation or parole, presently subject to an indictment, criminal information, or arraignment, or who has been convicted of a felony within the last five years; or those who (v) have obtained a direct or guaranteed loan from the SBA or any other Federal agency that is currently delinquent or have defaulted within the last seven years.

222. Also, excluded businesses, as listed in 13 CFR 120.110 are: financial businesses, passive businesses owned by developers and landlords, life insurance companies, businesses located in a foreign country, pyramid sale distribution plans, businesses deriving one-third of gross annual revenue from legal gambling, businesses engaged in illegal activity, private clubs and businesses that limit membership for reasons other than capacity, government-owned entities, businesses principally engaged in teaching, instruction, counseling or indoctrinating religion or religious beliefs, loan packagers earning more than one third of their gross annual revenue from packaging SBA loans, business with an associate who is incarcerated or probation or parole or indicted, businesses in which the lender or CDC owns an

equity interest, businesses which present live performances of a prurient sexual nature, or derives directly or indirectly more than *de minimis* from sales or services from such sexual activities.

223. The CARES Act does not impose a citizenship requirement to be entitled to obtain a PPP Loan. It prohibits use of loan funds for employees whose principal place of residence is outside the United States.

224. The U.S. Treasury published a statement saying that PPP applicants and lenders may consider IRS regulations (26 CFR §1.121-1(b)(2)) when determining whether an individual employee's principal place of residence is in the United States. [internet source: https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf ].

225. 26 CFR §1.121-1(b)(2) states that principal residence includes, but it is not limited to, (i) the taxpayer's place of employment, (ii) principal place of abode of the taxpayer's family members, (iii) the address listed on the taxpayer's federal and state tax returns, driver's license, automobile registration, and voter registration card, (iv) the taxpayer's mailing address for bills and correspondence; (v) the location of the taxpayer's bank; (vi) the location of religious organizations and recreational clubs with which the taxpayer is affiliated.

226. The Congressional Research Service dated May 7, 2020 titled "Unauthorized Immigrant's Eligibility for COVID-19 Relief Benefits: In Brief" mentions no legal or regulatory prohibitions barring non-citizens' participation in the PPP Loan Program, and states the CARES Act imposes no citizenship requirement on borrowers. [internet source: https://crsreports.congress.gov/product/pdf/R/R46339 pages 4-5 Section titled *Small Business Paycheck Protection Program (PPP) Loans*]

227. All Plaintiffs' principal place of residence is within the United States, within the meaning of 26 CFR §1.121-1(b)(2).

228. No plaintiff is engaged in a business excluded under 13 CFR 120.110.

229. Even large, foreign-owned businesses can qualify as eligible *"Small Businesses"* if the number of their employees which primarily reside and work in the United States is below certain thresholds.

230. Each Applicant Plaintiff conducts business in the United States as an independent contractor, sole proprietorship, or as self-employed, and serves as an integral part of the small business economy suffering adverse effects of the pandemic which effects the Paycheck Protection Program was specifically designed to mitigate.

231. Each Applicant Plaintiff is an intended beneficiary of the PPP.

232. Each Applicant Plaintiff is eligible for a PPP Loan.

233. Because Bank Defendants' misconduct was conducted in knowing violation of the terms of the CARES Act, ECOA, and 42 USC 1981, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

## STATE LAW CLAIMS

234. Plaintiffs reallege all of the foregoing paragraphs and assert the following.
235. Bank Defendants have warranted and represented that all eligible individuals for the Payroll Protection Program as established by the CARES Act will have their application processed.
236. Bank Defendants also represented to Applicant Plaintiffs that they will approve PPP Loan Applications if the applicants are qualified individuals or businesses under the CARES Act. These representations were directed at the public and have the potential to affect members of the public other than Plaintiffs who are similarly situated.
237. These representations were materially misleading in that, even though Bank Defendants represented that they will approve PPP Loan applications if applicants are qualified individuals or businesses under the CARES Act, and even though Applicant Plaintiffs met the minimum eligibility for a PPP Loan under the CARES Act, the Bank Defendants declined to approve or denied the applications. That is, from the representations on the website and interactions with the loan web application interface, as well as in email communications, Plaintiffs were misled into believing they would neither be excluded from receiving a PPP Loan nor discriminated against.
238. The failure of Bank Defendants to process the loan applications of Applicant Plaintiffs is a violation of duties owed to the Applicant Plaintiffs under State Law.
239. Bank Defendants interfered with the ability of Plaintiffs[10] to obtain funds intended to benefit them and their respective businesses, through the Paycheck Protection Program.
240. Accordingly, Plaintiffs bring claims against Bank Defendants to which they applied, for Misrepresentations in the loan application and commitment process, Improper application processing, Breach of Implied Covenant of Good Faith and Fair Dealing, Negligence, Negligent Misrepresentation, and for Unfair and Deceptive Trade Practices [NY GBL §349 & §350].
241. When the US Small Business Administration, took an action in fulfillment of its purpose, and published the PPP Program on May 4, 2020 [Fed. Reg. 26321][11], it entered into an implied contract with Plaintiffs.
242. Bank Defendants interfered with that contract by using whether or not the applicant possesses a SSN as a factor in eligibility, resulting in those Applicant Plaintiffs' who were not approved or denied PPP loans incurring injuries.

---

[10] excepting Javier Gonzales Castro
[11] Publication Titled "Temporary Changes to the Business Loan Program; Paycheck Protection Program Requirements [and] Disbursements"

243. Accordingly, each Plaintiff bring claims against those Bank Defendants to which he applied but was not approved, for Tortious Interference with a Prospective Contract.

244. In addition to the above State Law Causes of Action, especially Misrepresentations in the Loan Application and Commitment process, Applicant-Plaintiffs Cuellar, who was approved but has not received loan funds from Kabbage, Inc., and Jorge Yumbato Castro, with whom Biz2Credit attempted to unilaterally revoke agreement subsequent to representing that all required signatories had signed, also each bring claim for Specific Performance and for Wrongful failure to honor a loan commitment.

245. Plaintiffs reallege all the preceding paragraphs and state they also bring claim for Breach of Contract, and Breach of Implied Warranty.

FACTS PERTAINING TO SBA AND TREASURY'S ISSUANCE OF SOP 50 10 5(b)

246. Government Defendants have issued interim regulations and guidance including, but not limited to, Standard Operating Procedure, SOP 50 10 5, to provide guidance to lenders accepting applications for loans to be guaranteed under the Paycheck Protection Program. It provides, among other things, that undocumented aliens are ineligible for loans to be guaranteed under the Paycheck Protection Program.

247. Under the APA, the Court has authority to hold unlawful and set aside agency actions, findings and conclusions found to be arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law.

248. To the extent that the SOP establishes requirements beyond those established by the CARES Act, the SOP is invalid and should be set aside.

249. To the extent that the SOP established requirements inconsistent with the CARES Act, the SOP is invalid and should be set aside.

250. To the extent that the SOP establishes requirements which are unlawful by the federal causes of action raised, the SOP is invalid and should be set aside.

RELIEF REQUESTED

251. Wherefore, Plaintiffs each respectfully request as relief

   (1) A decree compelling Bank Defendants to which each Plaintiffs has applied to process Applicant Plaintiffs' loan applications;

(2) Judgment (a) against the Bank Defendants in an amount to be determined at trial, but not less than $100,000 for actual damages, punitive damages of Ten Thousand Dollars $10,000, plus the costs of this action and attorneys' fees; and (b) against the Small Business Administration and Treasury Department declaring that their interim regulations and guidance, including but not limited to SOP 50 10 5 are invalid to the extent that they declare the illegal aliens are ineligible for loans to be guaranteed pursuant to the Paycheck Protection Program and enjoining the Small Business Administration and Treasury Department to supplement the SOP with a directive superseding the incorrect guidance hereto furnished and other just and further relief as is deemed appropriate.


Jhonatan Mondragon,
Plaintiff, *pro se*
39-42 64th Street
Woodside, NY 11377


JORGE YUMBATO CASTRO
Plaintiff, *pro se*
48-36 47th Street
Woodside, NY 11377


URBANO GONZALEZ
Plaintiff, *pro se*
39-42 64th Street, 2 Fl,
Woodside, New York 11377


JANISSHONG GARCIA
Plaintiff, *pro se*
175-08 93rd Avenue,
Jamaica, New York 11432

OSCAR TORRES
Plaintiff, *pro se*
3050 Park Avenue, Apt 16G
Bronx, New York 10451


SERAFINA BLANCO VALLE
Plaintiff, *pro se*
1828 Flatbush Avenue, Apt 2,
Brooklyn, NY 11210


EMMA MOLINA
Plaintiff, *pro se*
31 Wesley Lane,
Burlington NJ 08016

SYLVIA CASTRO
Plaintiff, *pro se*
48-36 47th Street
Woodside, NY 11377


CLARIBEL CUELLAR
Plaintiff, *pro se*
619 Ridge Road, 2nd Floor avenue
Lyndhurst, New Jersey 07071


CARLOS JUAREZ RODRIGUEZ
Plaintiff, *pro se*
201 4th Ave, Apt 17
Redwood City, CA 94063


FRANCO R. MALVACEDO
Plaintiff, *pro se*
15 Marksman Lane
Levittown, New York 11756